**EUTECTIC CORPORATION,**
Plaintiff-Appellee,

v.

**ASTRALLOY–VULCAN
CORPORATION et al.,**
Defendants-Appellants.

No. 74–2056.

United States Court of Appeals,
Fifth Circuit.

April 7, 1975.

Rehearing Denied June 9, 1975.

Howard P. Walthall, L. Drew Redden, Birmingham, Ala., for defendants-appellants.

Robert M. Collins, Birmingham, Ala., Arthur M. Lieberman, Stephen B. Judlowe, New York City, for plaintiff-appellee.

Before GEWIN, BELL and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Appellant Astralloy-Vulcan (Vulcan), an Alabama corporation, manufactures and sells a patented alloy under the trade name "Astralloy". Because of its hardness, Vulcan advertises and sells Astralloy for such high-wear items as wear plates, shafts, gear teeth, bucket teeth, valve stems, scrapers, mixer blades, mining equipment, drag line buckets and dies. Eutectic Corporation engages in the manufacture and sale of various metal related materials including metallic and alloy powders and compounds to be used for hardening the surface of softer metals to give them the wear qualities necessary for the same type of machine uses served by Astralloy. Eutectic sued Vulcan and its former employees, Harold Caine and James Bearden, alleging that the latter breached restrictive covenants contained in their employment contracts with Eutectic Corporation, and that defendant Vulcan not only induced the breaches but, together with Caine and Bearden, "pirated" other of Eutectic's high-performing sales personnel. Bearden and Vulcan appeal from the district court's order granting Eutectic's motion for partial summary judgment and instituting injunctive relief. We affirm.

Caine left his employment with Eutectic in May 1972 after progressing from salesman to Vice President and National Sales Manager. In September 1972, following a series of meetings with the President of Vulcan, Caine joined that company as Vice President in Charge of Sales. Subsequently, Bearden, who had been Eutectic's sales manager for the southeastern region of the United States, and who had been introduced to Vulcan by Caine, left his nine-year employment with Eutectic to join Vulcan and assume duties comparable to those he discharged for Eutectic in substantially the same territory. Bearden was one of eleven Eutectic personnel identified by Caine as "good performers" to be considered for employment with Vulcan, and was one of seven such former Eutectic employees hired by Vulcan to constitute the bulk of the sales force it formed under Caine.

Caine, Bearden and the other six Eutectic salesmen had all executed employment contracts with Eutectic which included non-competition and confidentiality clauses, the substance of which prohibited, for two years subsequent to employment competition with Eutectic as to customers and territories previously serviced and proscribed the use or disclosure to others of confidential business information acquired while in the employ of Eutectic.[1]

1. Caine's "employment agreement" contained the following pertinent provisions:

    \*    \*    \*    \*    \*    \*

(5) It is our firm company policy that the following non-competitive secrecy provision constitute a part of your employment agreement—

(a) You do covenant and agree that all business matters concerning our company or our affiliates, in which you are engaged while in our company and after you leave our company, will be treated by you in strict confidence. You expressly covenant that you will keep inviolate and never directly or indirectly use for yourself (except while you are in our employ and solely in pursuit of our activities as such employee) or use against the interests of our company, or disclose, communicate, divulge or furnish to any other person, firm or corporation any confidential information or business secrets relating to our organization,

the conduct of our operations, the materials, processes, plans, designs, models, apparatus, equipment and formulations used in our manufacturing operations and experimental investigations, any commercial or technical information, improvements or things of which you may have gained knowledge or discovered, invented or perfected while in the employ of our company or any working methods or list of suppliers or customers or any ideas or processes of manufacture or any product of articles sold or distributed by us which may be communicated to you or which you may learn by your activities under this Agreement.

    \*    \*    \*    \*    \*    \*

(c) As we and our affiliated companies manufacture and/or sell under a variety of trademarks a specialized line of welding materials and products and a specialized line of equipment for use in welding and in connection therewith and have developed

Pursuant to Rule 56(d)[2] the district court found the foregoing and the following material facts to be without substantial controversy. Eutectic's salesmen and regional sales managers not only received special training in the sales technique and application of Eutectic products but also were privy to customer cards and lists containing special customer needs, and prior buying pattern histories. As Eutectic's National Sales Manager, Caine received extensive reports regarding the totality of such customer information and regarding the performance records of Eutectic's sales and sales supervisory personnel as well. Caine thus was aware of the better performers on Eutectic's sales staff. During his pre-employment discussions with Vulcan, Caine advised them of the existence and pertinent provisions of his employment contract and prior position with Eutectic. After he was employed by Vulcan, Caine discussed Vulcan's employment of at least eleven individuals Caine thought were good performers, who were then still employed by Eutectic. When former Eutectic employees began this work for Astralloy they recommended to customers that Astralloy be substituted or used in situations for which they had formerly recommended Eutectic materi-

als. With the knowledge and consent of Vulcan and during the period prohibited by their Eutectic contracts, these employees had called on and solicited for Vulcan their former Eutectic customers.

The district court concluded that Vulcan, Caine, and Bearden utilized confidential Eutectic information to select which of Eutectic's better salesmen to approach, that individually and collectively they induced a number of such salesmen to leave Eutectic for Vulcan; that Vulcan and Eutectic were competing for the same sales relative to wear plates, shafts, gear and bucket teeth, valve stems, scrapers, mixer blades, mining equipment, drag line buckets and dies; that Caine, Bearden and the other former Eutectic salesmen thus violated their post-employment non-competition clauses; that Vulcan had full knowledge of the Eutectic employment contracts; and that Vulcan was culpable "in hiring Eutectic employees and utilizing them to solicit competing goods within the same territories previously serviced by Eutectic (and, in many cases, to the same customers) in violation of their employment contracts".

The district court noted that Vulcan had stated that the area of competition

special formulations and equipment and utilize a specialized technique of sales and service concerning all of which you will, during your employment with our Company, have access to confidential information, you agree that you will not anywhere in the territory over which you will function during your employment, without prior written consent of our Company, signed by one of our Company officers, during and for a period of two (2) years after your employment with our Company, enter the employ of or render any services to any person, firm, partnership or corporation dealing in materials, products or equipment or a line of materials, products or equipment which compete with any materials, products or equipment which we and/or our affiliated companies market, or engage in any competing business on your account or become interested therein as a Director, principal, representative, employee or any other relationship or capacity.

Bearden's contract, which was signed on behalf of Eutectic by Caine, was substantially similar but included an additional provision

prohibiting inducing fellow employees to leave Eutectic. We also note that virtually identical contracts and provisions were later adopted by Vulcan and executed by its employees.

2. Rules of Civil Procedure 56(d) provides:

If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

involved amounted to not more than 5 percent of its total business and that suitable sales representatives were available to it from a source other than Eutectic. The court concluded it was necessary "to enjoin competition [by Vulcan with Eutectic] through such [former Eutectic] employees for a period of two years and further, to enjoin in the future, any hiring by Vulcan of Eutectic employees during the period before their restrictive covenant has run." The specific language of the injunction order is set out in the margin.[3]

On this appeal Vulcan first challenges as contested several of the facts found to be undisputed by the trial court and asserts the existence of other disputed material facts, all of which, Vulcan argues, should have precluded summary judgment. Having posited that whether or not Vulcan and Eutectic are in competition is one such material *fact* in dispute, Vulcan contends that it was error for the trial court to conclude, as a matter of *law,* that Eutectic and Vulcan are competing. It asserts that *mala fides* on its part was not established. In its final three specifications, Vulcan challenges the legality and enforceability of Eutectic's restrictive covenants, questions the trial court's ability to grant injunctive relief when the services of the employees in question were not unique, and contends that in any case the injunctive relief granted was over broad.[4]

■ It is unquestioned that on an appeal from a summary judgment, the record must be read in the light most favorable to the party opposed to the motion, Dassinger v. South Central Bell Telephone Co., 505 F.2d 672 (5th Cir. 1974), but at the same time we are "rule-bound by the material facts which are without genuine dispute . . . Fed. R.Civ.P. 56(c).", Reedy v. Travelers Insurance Company, 500 F.2d 1117, 1118 (5th Cir. 1974). *See also* Sweet v. Childs, 507 F.2d 675 (5th Cir. 1975).

■ Whether parties have engaged in competition is normally a question of fact, and Vulcan assiduously disputed that it was competing. However, in the case at bar the equation is slightly more complex than usual. There is no factual dispute as to what products the parties sold, nor as to the intended use of these items. Rather, the contest centers upon whether these undisputed actions constituted competition. This involves a mixed question of undisputed fact and contested law which was properly treated as a candidate for summary judgment. The material facts not in dispute were sufficient to support the legal conclusion that Vulcan and Eutectic were competing in the limited areas of application the court specified. In these uses Eutectic and Vulcan are seeking to satisfy the same customer requirements (a hard metal surface to withstand high wear) albeit with different types of goods. The district court's analysis is apt.

> Both parties seek to sell goods to customers requiring shafts, wear plates, dies and the like, having a hard sur-

3. Defendants and each of them, and those in privy therewith, are hereby and in the future enjoined from directly or indirectly soliciting or hiring as an employee, representative, or otherwise, any employee of Eutectic subject to a post employment restraint on competition or post employment restriction on use of confidential information prior to two years following his termination of employment with Eutectic.

Defendants and each of them, and those in privy therewith, to expressly include all former Eutectic employees in · the employment of Astralloy or who represent Astralloy in any capacity, are hereby and for a period of two years from the date hereof enjoined from competing with plaintiff Eu-

tectic, directly or indirectly, through any prior Eutectic employees, or through information provided thereby, in soliciting the sale of any Astralloy product for dies, wear plates, shafts, gear teeth, bucket teeth, valve stems, scrapers, mixer blades, mining equipment, and drag line buckets.

4. Vulcan also urges on this appeal that the trial court acted without having before it certain depositions which were referred to in Eutectic's motion for admissions. The question was not presented to the trial court. At oral argument we requested counsel, who did not try the case, to consult as to the possibility of stipulating the pertinent facts. No such stipulation has been filed. We decline to reach the issue.

face. [Vulcan] sells a specialty alloy steel which is hard *per se*, and thus, exhibits the requisite surface hardness. Eutectic sells alloy powders for the express purpose of surface hardening the soft underlying metals. The customer is given the choice between employing one method or the other. A similar customer choice is presented by either using Eutectic welding materials, offered to repair broken shafts, or replacing such shafts with Astralloy material. In such cases, the success of one party is the sales disadvantage of the other.

■ Vulcan further asserts that a dispute existed as to its intentional or knowing violation of Eutectic's rights under employment contracts it had with the personnel hired away. It insists that something more must be shown than mere knowledge that the salesmen it employed were formerly employed in the same type of sales work by Eutectic, and that if any proof of a wrongful participation in the violation of a covenant not to compete can be inferred from this record, the existence of a bad motive on its part is at least in dispute thus making summary judgment improper. Vulcan's point is not well taken. Proof of an evil motive or bad faith intention to injure Eutectic is not required to be shown.

The circumstances present here support the relief granted. Knowing actions were enough. Vulcan knew its former Eutectic employees were calling on the same customers formerly serviced. The undisputed facts demonstrated that Vulcan's president knew Caine had an employment agreement with Eutectic which restricted post-employment competition. Caine, who hired Bearden for Vulcan, had signed Bearden's contract with Eutectic for that corporation. Vulcan knew Caine had been Eutectic's National Sales Manager, and it must have known that he was recruiting almost exclusively from the sales force of his former employer. No genuine issue of fact exists under Rule 56 as to Vulcan's knowledge that ex-Eutectic employees were breaching contractual covenants because reasonable men could not differ as to the existence of such knowledge. *Doyle v. Bethlehem Steel Corporation,* 504 F.2d 911 (5th Cir. 1974).

■ By the express terms of the employment contracts themselves, New York law controls. Under that law the restrictive covenants, which were limited both in time (two years) and territorial extent (the area served for Eutectic), are enforceable, *American Eutectic, etc., Alloys Sales Co., Inc. v. Rodriguez,* 480 F.2d 223 (1st Cir. 1973); *Water Services, Inc. v. Tesco Chemicals, Inc.,* 410 F.2d 163 (5th Cir. 1969), whether or not the services of the employees were unique. *See Frederick Chusid & Co. v. Marshall Leeman & Co., Inc.,* 279 F.Supp. 913 (S.D.N.Y.1968).

Given the admittedly minimal impact on Vulcan's total business, its ability to acquire salesmen from other sources, and in light of Vulcan's representation on appeal that only three (not including either Caine or Bearden) of the former Eutectic employees remain in Vulcan's employ, the district court's decision to enjoin the defendants was well within the range of its discretion. *Buchanan v. United States Postal Service,* 508 F.2d 259 (5th Cir. 1975); *Bayless v. Martine,* 430 F.2d 873 (5th Cir. 1970).[5]

Affirmed.

5. We do not know why the injunction did not follow the territorial restriction of the contract in limiting its competitive bar to the geographical area covered during Eutectic employment. However, there is nothing in the record which indicates that this broader reach of the very limited product competition prohibition results in a burden so unreasonable for Vulcan to shoulder that the sweep of the injunction is beyond the ambit of the court's discretion. Former Eutectic employees can still sell any Vulcan product anywhere except for the specific uses expressly proscribed.