CURTISS-WRIGHT CORPORATION *vs.* EDEL-BROWN
TOOL & DIE CO., INC.

Middlesex. March 5, 1980. — June 25, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Trade Secret. Practice, Civil*, Directed verdict, Injunction. *Damages*, Wrongful use of trade secret.

In an action seeking damages for the misappropriation of the plaintiff's trade secrets and an injunction against the defendant's use and enjoyment of the plaintiff's trade secrets, there was sufficient evidence to warrant findings that the Department of the Navy had violated a duty to the plaintiff in releasing certain drawings to the defendant and that the defendant had notice that the disclosure was a breach of duty by the Navy. [3-7]

In an action for misappropriation of the plaintiff's trade secrets, the judge did not err in refusing to charge and to submit special questions to the jury on the defendant's estoppel theory where the jury specifically found that the defendant had notice of the plaintiff's proprietary interests. [7-8]

In an action for misappropriation of the plaintiff's trade secrets, the judge did not abuse his discretion in refusing to admit a letter which the defendant sought to introduce as evidence, relating to its defense of estoppel, of the plaintiff's business habit of taking swift action to prevent contract awards whenever there was a question of trade secret rights. [8-9]

In an action for misappropriation of the plaintiff's trade secrets, the judge did not err in issuing a permanent injunction restraining the defendant's use and enjoyment of the trade secrets where a finding was warranted that neither the defendant nor others in the trade were likely through legitimate procedures to learn the secrets contained in the drawings of the plaintiff's product even though the product had been marketed. [9-11]

In an action for misappropriation of the plaintiff's trade secrets, the judge erred in assessing damages based on the defendant's projected profits from completion of a contract where the defendant had no such profits because of the judge's imposition of an injunction forbidding completion of the contract. [11-12]

CIVIL ACTION commenced in the Superior Court Department on December 7, 1978.

The case was tried before *Donelan*, J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*George O. Gregson* (*Patricia A. Donoghue* with him) for the defendant.

*Douglas G. Moxham* (*Thomas D. Herman* with him) for the plaintiff.

HENNESSEY, C.J. This is an appeal from a judgment entered, pursuant to a special jury verdict in favor of the plaintiff,[1] assessing damages and enjoining the defendant's use and enjoyment of certain of the plaintiff's trade secrets. The appeal, originally entered in the Appeals Court, was transferred to this court on our own motion. The defendant urges three grounds as reversible error. The defendant first claims error in the trial judge's refusal to grant its motions for a judgment notwithstanding the verdict and for a new

---

[1] In response to special questions the jury found the following: (1) that Curtiss-Wright piston drawings numbered 149453 and 149486 contained trade secrets owned by Curtiss-Wright; (2) that Curtiss-Wright had taken all proper and reasonable steps to protect its trade secrets; (3) that Edel-Brown used Aircraft Supplies drawings given to it by the Department of the Navy in January, 1978; (4) that Edel-Brown had notice that the Aircraft Supplies drawings given to it by the Navy contained trade secrets owned by Curtiss-Wright and that the Navy was breaching the duty it owed Curtiss-Wright in disclosing the secrets; (5) that Edel-Brown first had notice of the facts found in (4), *supra*, in August, 1978; (6) that Edel-Brown did not change its position in a substantial way at any time prior to August, 1978; and (7) that the amount of damages sustained by Curtiss-Wright as a result of Edel-Brown's use of the Aircraft Supplies drawings given to it by the Navy was $178,214.

trial on the ground that there was insufficient evidence to support the jury's finding that the Navy had violated a duty to the plaintiff. It also contends that it was error for the trial judge to refuse to instruct and offer special questions to the jury on its estoppel defense and to refuse to admit evidence of a business habit going to the defense of estoppel. Finally, the defendant argues that the issuance of a permanent injunction was unreasonable and that the measure of damages was incorrectly determined. We find no error with regard to the defendant's first and second claims. However, for reasons discussed below, we agree that, in the particular circumstances of this case, the award of damages was miscalculated. Accordingly, we vacate and remand so much of the Superior Court judgment as awards damages and affirm the imposition of the injunction.

1. We turn first to the defendant's claim that it was error for the trial judge to refuse to grant its motions for judgment notwithstanding the verdict and new trial on the ground that the evidence did not warrant the jury's finding that the Navy's disclosure of drawings containing Curtiss-Wright's trade secrets constituted a violation of duty.[2] In examining the denial of the defendant's motion for a judgment notwithstanding the verdict, we employ the standard applicable to a motion for a directed verdict. *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 657-658 (1978). Under that standard the evidence must be viewed in the light most

---

[2] The defendant has not argued before this court the correctness of the jury's finding that the drawings in question contained trade secrets owned by Curtiss-Wright. See *USM Corp.* v. *Marson Fastener Corp.*, 379 Mass. 90, 93 n.5 (1979), and cases cited. However, the defendant's various arguments do raise, howbeit collaterally, the lack of a confidential relationship between it and Curtiss-Wright. We think it clear that a relationship exists between the parties sufficient to hold the defendant liable for misappropriation of the plaintiff's trade secret. Such liability has been recognized in the context of a supplier-purchaser relationship where a competitor is given plans and specifications by a purchaser, who has received them subject to an understanding of confidentiality. Relief may. be had against such a competitor despite the lack of any legal relationship between the competitor and the supplier whose plans were appropriated. R. Milgrim, Trade Secrets § 5.03 [4], at 5-71 to 5-72 (1978).

favorable to the plaintiffs: "If, upon any reasonable view of the evidence, there is found a combination of facts from which a rational inference may be drawn in favor of the plaintiffs, there was an issue for decision by the jury and the [motion was] properly denied." *Chase* v. *Roy*, 363 Mass. 402, 404 (1973). This rule applies where there is conflicting evidence, and "it is of no avail for the defendant to argue that there was some or even much evidence which would have warranted a contrary finding by the jury." *Id.* at 407. Pursuant to this standard, we set forth pertinent facts as the jury could have found them.

The defendant Edel-Brown Tool & Die Co., Inc. (Edel-Brown), a Massachusetts corporation engaged in the manufacture and sale of such items as airplane engine replacement parts, was solicited in January, 1978, by the Aviation Supply Office, Department of the Navy, as a potential manufacturer of pistons for the so called R-1820 engine. The Navy had previously ordered the pistons only from the plaintiff, Curtiss-Wright Corporation (Curtiss-Wright), which considered itself a sole-source supplier and the owner of trade secrets represented on the drawings.[3] In connection with the solicitation, a Navy contracting officer gave Edel-Brown's government contracts manager certain drawings to examine so that the latter might determine whether Edel-Brown could produce the depicted piston. The evidence was such that the jury could have found that the drawings had been prepared, at the solicitation of the Navy, by Aircraft Supplies Company (Aircraft Supplies) from government copies of the Curtiss-Wright drawings in Aircraft Supplies' possession. Edel-Brown was told that Curtiss-Wright drawings for the piston were proprietary but that the Aircraft Supplies drawings were not. Edel-Brown was also told that if it

---

[3] Beginning around 1965 Curtiss-Wright, pursuant to its contracts with the U.S. government, began sending the government microfilm drawings of parts of the R-1820 engine. The contract provisions and the legends on the drawings prohibited the government from releasing, using, duplicating, or disclosing, in whole or in part, the drawings for manufacture or procurement, without Curtiss-Wright's written permission.

prepared drawings containing the information on the Aircraft Supplies drawings, such drawings would be acceptable for the Navy's procurement purposes. When Edel-Brown's president indicated that his company could indeed make the piston, the Navy contracting officer gave him the Aircraft Supplies drawings to copy.

In August, 1978, the Navy's Aviation Supply Office sent invitations to bid on a piston procurement contract to Edel-Brown, Curtiss-Wright, and Aircraft Supplies. The provisions of the bid invitation indicated that the Curtiss-Wright drawings were the specifications for manufacture but that the drawings could not be obtained from the government by other bidders. The bid invitation was subsequently amended to indicate that any of the three sets of drawings by Aircraft Supplies, Edel-Brown, or Curtiss-Wright would operate as the performance specification.

The Navy's request for proposals was announced August 8 in the Commerce Business Daily and included the names and addresses of all three companies being solicited. Curtiss-Wright's manager of product support, George Guillot, read the announcement and testified that he was "flabbergasted" by what he read. On August 14, 1978, he notified corporate counsel of his belief that Curtiss-Wright's proprietary rights were about to be or had been violated. Having submitted its bid on September 7, 1978, Curtiss-Wright wrote to the Navy Aviation Supply Office later that month to inquire as to the release of its drawings in connection with the bid invitation. In November, 1978, the Navy notified Curtiss-Wright that its drawings had not been released and informed the company that the contract had been awarded on October 31 to Edel-Brown. Thereafter, Curtiss-Wright gave Edel-Brown written notice of its claim of proprietary or trade secret rights. Edel-Brown responded that it did not have Curtiss-Wright drawings or data, and this suit followed.

It is true, as the defendant asserts, that one must have notice of both the fact that the information claimed to be a trade secret is in fact secret and the fact that disclosure by

the third person is a breach of duty before one is subject to liability for the use or disclosure of the trade secret. Restatement of Torts § 757 (1939). However, it has been recognized that "frequently the two facts are mutually dependent and notice of the one is also notice of the other. Thus, if the actor knows [or should know][4] that the information proffered to him by one person is the trade secret of another he is put on inquiry as to the former's authority to disclose the information." *Id.* § 757, Comment m. A defendant cannot insulate himself by "studious ignorance of pertinent 'warning' facts." R. Milgrim, Trade Secrets § 5.04[2], at 5-95 (1978). Knowledge or the likelihood that a defendant knew of the wrongful character of the disclosure can and often must be proved by the weight of credible circumstantial evidence. *Id.* § 5.04 [3], at 5-102.

In light of the foregoing principles and the standard applicable to a motion for judgment notwithstanding the verdict, the jury were warranted in finding that Edel-Brown had notice that the Navy had given it Curtiss-Wright's trade secrets in violation of a duty to Curtiss-Wright. As of Edel-Brown's January, 1978, meeting with the Navy contracting officer, the jury could find that Edel-Brown's contract manager knew that the Curtiss-Wright drawings were trade secrets; that the Navy was under a contractual duty not to disclose the Curtiss-Wright drawings to a competitor; that the Aircraft Supplies drawings were in all material respects identical to the Curtiss-Wright drawings; that Edel-Brown could use the Aircraft Supplies drawings in the place of the Curtiss-Wright drawings to build the piston; that, where

---

[4] It is generally acknowledged that the notice necessary to make receipt or use of a trade secret tortious need not be actual notice: "One has notice of facts . . . when he knows of them or when he should know of them . . . . He should know of them if, from the information which he has, a reasonable man would infer the facts in question, or if, under the circumstances, a reasonable man would be put on inquiry and an inquiry pursued with reasonable intelligence and diligence would disclose the facts." Restatement of Torts § 757, Comment l (1939). See *Carter Prods., Inc.* v. *Colgate-Palmolive Co.*, 130 F. Supp. 557, 579 (D. Md. 1955), aff'd, 230 F.2d 855 (4th Cir.), cert. denied, 352 U.S. 843 (1956).

government procurement agencies specify performance in accordance with drawings, the drawings contain the information pursuant to which the product is to be made; that on no occasion prior to the January meeting had a government procurement employee shown Edel-Brown's contract manager a drawing and asked him to resubmit the same drawing with a different name on it; and that it was not usual to receive drawings from the government without a record, such as a written transmittal document. The formal bid invitations and amendments of August, 1978, could be found to confirm the identical nature of the Edel-Brown, Aircraft Supplies, and Curtiss-Wright drawings, so as to put the defendant on notice of the true source of the Aircraft Supplies drawing and the impropriety of the Navy's disclosure of it.

Nor was there error with regard to the trial judge's refusal to order a new trial on the ground of the alleged insufficiency of evidence. Everything that we have said above supports our conclusion that the trial judge did not abuse his discretion. See *Ryan* v. *Hickey*, 240 Mass. 46, 47-48 (1921).

2. We next consider the defendant's arguments relating to the defense of estoppel. Edel-Brown argues that since Curtiss-Wright had notice in August of the potential use of information which it, Curtiss-Wright, considered proprietary; since Curtiss-Wright had the opportunity to object or otherwise give notice to Edel-Brown of its claim prior to the Navy's award of the contract on October 31; and since there was sufficient evidence to support the conclusion that there was a mistaken belief of fact on the part of Edel-Brown as to the nonproprietary nature of the Aircraft Supplies drawing, Curtiss-Wright had a duty to correct Edel-Brown's mistaken belief.[5] The defendant further asserts that even though the

---

[5] Edel-Brown relies on Restatement (Second) of Torts § 894(2) (1979), which provides: "If one realizes that another because of his mistaken belief of fact is about to do an act that would not be tortious if the facts were as the other believes them to be, he is not entitled to maintain an action of tort for the act if he could easily inform the other of his mistake but makes no effort to do so." Edel-Brown's reliance on this section of the Restatement is misplaced. The jury specifically found that Edel-Brown had notice of its violation of Curtiss-Wright's proprietary rights as of August, 1978. Consequently this section by its terms is inapposite.

jury found that it had constructive notice of Curtiss-Wright's rights in August, that presumed knowledge did not constitute the intent necessary to commit the tort of misappropriation. Consequently, the defendant contends that it was error for the trial judge to refuse to charge and to submit special questions to the jury on the defendant's estoppel theory. There was no error.

In light of the fact that the jury specifically found that Edel-Brown had notice of Curtiss-Wright's proprietary interests as of August, 1978, the requested instructions and questions would require an owner of a trade secret to give notice to a defendant of his wrongful conduct even if the defendant already has notice, constructive or actual. We have not found, and the defendant has not cited, any authority for such a proposition. Cf. R. Milgrim, Trade Secrets § 5.04[2], at 5-99 (1978). Moreover, any possible claim of estoppel was encompassed in the judge's instructions pursuant to Restatement of Torts § 758.[6] Finally, proof of an evil motive or bad faith intention to injure need not be shown. *Eutectic Corp.* v. *Astralloy-Vulcan Corp.*, 510 F.2d 1111, 1115 (5th Cir. 1975).

3. Edel-Brown next presses a question of evidence related to its estoppel argument. At trial Edel-Brown sought to introduce a letter which it considered to be evidence of a Curtiss-Wright business habit of taking swift action to prevent contract awards whenever there was a question of trade secret rights. Again relying on an estoppel theory, Edel-Brown argues that the letter would tend to prove that

---

[6] Restatement of Torts § 758 (1939) provides: "One who learns another's trade secret from a third person without notice that it is secret and that the third person's disclosure is a breach of his duty to the other, or who learns the secret through a mistake without notice of the secrecy and the mistake, (a) is not liable to the other for a disclosure or use of the secret prior to receipt of such notice, and (b) is liable to the other for a disclosure or use of the secret after the receipt of such notice, unless prior thereto he has in good faith paid value for the secret or has so changed his position that to subject him to liability would be inequitable." The definition of notice supplied by Comment l of § 757, see note 4, *supra*, is made applicable to § 758 by Comment d of § 758.

Curtiss-Wright could have acted more promptly than it did to give notice of its asserted rights and that this failure to act caused Edel-Brown to change its position in reliance on the award of the contract.

The trial judge excluded the letter on the grounds that it related to a collateral matter about which the circumstances were not known and that it might consume an amount of trial time disproportionate to its contribution to the case to develop the circumstances. In general, the trial judge has wide discretion in applying to a particular case policy considerations, such as those relied on here, which may limit the introduction of otherwise logically relevant information. K.B. Hughes, Evidence § 284 (1961). We do not think that the judge abused his discretion here.

4. The problem remains as to the appropriateness of the remedy afforded the plaintiff. The jury found that the amount of damages sustained by Curtiss-Wright as a result of Edel-Brown's use of the Aircraft Supplies drawings given to it by the Navy was $178,214. As part of the final judgment, the trial judge also ordered a permanent injunction restraining Edel-Brown from performance under any contract in which it utilized information contained on the Curtiss-Wright drawings or contained on any other drawings embodying the same information. Edel-Brown was also ordered to surrender all documents, computer programs, tools, cutters, and fixtures prepared for manufacturing the pistons. As of the time of this appeal, Edel-Brown, in accordance with the trial judge's order, had not delivered the contracted pistons and had not been paid for them. Although the Navy has not cancelled the 1978 contract, it has awarded a new contract to Curtiss-Wright for a different quantity of the same pistons at the Curtiss-Wright 1978 bid price.

The defendant contends that the issuance of a permanent injunction of unlimited duration was unreasonable. It further argues that the measure of damages, based on a jury charge that was framed in terms of Edel-Brown's being allowed to complete its contract and receive profits therefrom, was inconsistent with the injunction forbidding per-

formance of the contract. We agree with the latter argument and remand the case for a determination of damages in accordance with this opinion.

We have had occasion in prior cases to consider the appropriateness of permanent injunctions to prevent trade secret violations. While we have acknowledged that injunctions must be reasonable as to time, we have nonetheless emphasized that "an injunction is not unreasonable merely because it is permanent." "[W]hat is reasonable [must] depend in each instance on the facts in the particular case." *Eastern Marble Prods. Corp. v. Roman Marble, Inc.*, 372 Mass. 835, 842 (1977), quoting *Analogic Corp. v. Data Translation, Inc.*, 371 Mass. 643, 647 (1976) (citations omitted).

The defendant contends that because the piston has been marketed, there has been an opportunity for competitors to reverse engineer it and consequently the maximum period of time an injunction should be imposed should reflect the time needed for reverse engineering.[7] We have previously held that the amount of time necessary to reverse engineer a plaintiff's device without improper use of trade secrets is relevant to determining the scope of any injunctive relief. *Analogic Corp. v. Data Translation, Inc., supra* at 647-649. However, we have been careful to stress the fact that reverse engineering is but one factor in the calculus of reasonableness. *Id.* at 648-649. In conformity with our emphasis on commercial morality, we have stated that "defendants should not be permitted a competitive advantage from their avoidance of the normal costs of invention and duplication." *Id.* at 649.

---

[7] The defendant also points to *Air Technology Corp. v. General Elec. Co.*, 347 Mass. 613, 630 (1964), as precedent for this court's refusal to enjoin a government contract important to the national defense. That case involved contracts for an Air Force "project to establish installations in North America for detecting and determining the direction and yield of nuclear detonations." *Id.* at 614. Such a project was clearly "important to the national defence." See *id.* at 630. The defendant has not demonstrated that the pistons in question are similarly vital to the defense of this country. Nor has the defendant demonstrated that the contracts subsequently awarded to Curtiss-Wright have failed to meet the Navy's immediate requirements.

The defendant was afforded an opportunity to introduce evidence concerning the possibility of reverse engineering. However, Curtiss-Wright vigorously disputed the possibility of any competitor's ability to copy the pistons in sufficient detail so as to comply with the range of tolerances on the drawings referred to in the Navy's contract solicitation. In the face of such conflicting evidence, the trial judge upon issuing the injunction found that Edel-Brown or others in the trade were not likely through legitimate procedures to learn the secrets contained in the drawings. We cannot say that this finding is clearly erroneous or that the judge abused his discretion in imposing a permanent injunction. The Curtiss-Wright piston has been manufactured for over forty years. No American manufacturer has produced such a piston except during wartime under licenses from Curtiss-Wright. The failure of competitors to produce a comparable piston proves a major degree of continued secret despite the marketing of the plaintiff's product. See Arnold, Rights in Trade Secrets That Are Not Secret, in Patent Procurement and Exploitation 125 (Sw. Legal Foundation 1963). For these reasons and for reasons of commercial morality, a permanent injunction was warranted in this case.[8]

This court has recognized three acceptable methods of measuring damages in cases involving business torts such as the misappropriation of trade secrets: the defendant's profits realized from his tortious conduct, the plaintiff's lost profits, or a reasonable royalty. *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 169, 171 n.10 (1979). Because Curtiss-Wright claimed (and continues to claim) a specific loss of such items as direct lost profits, loss of recoverable overhead and general administrative expenses, see R. Milgrim, Trade Secrets § 7.08 [3], at 7-155 (1978), the appropriate measure of damages in this case was the greater of the plaintiff's lost profits or the defendant's gain.[9] *Jet*

---

[8] We do not preclude the possibility that at some time in the future a substantial change of circumstances may entitle the defendant to seek judicial consideration as to whether the injunction should be dissolved.

[9] We have noted that "the 'reasonable royalty' measure of damages is only appropriate where the defendant has made no actual profits and the

*Spray Cooler, Inc.* v. *Crampton, supra* at 170. This measure was used below. However, the jury were instructed to calculate damages as if Edel-Brown had completed its contract and received profits from its misappropriation.[10] In fact, because of the imposition of the injunction forbidding completion of the contract with the Navy, the defendant had no profits. There is no way to determine whether the figure awarded by the jury does indeed represent the correct measure of damages — the plaintiff's lost profits. Accordingly, we remand the case for a reconsideration of damages. We note that remand presents an opportunity for consideration of an additional factor which was uncertain at the time of trial but is now a reality, namely the award of a "replacement" contract to Curtiss-Wright. An issue may arise as to the degree to which the profits from such a contract should be set off against the plaintiff's lost profits from the 1978 contract.

The judgment is reversed in so far as it awards damages. In all other respects the judgment is affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

plaintiff is unable to prove a specific loss." *Jet Spray Cooler, Inc.* v. *Crampton,* 377 Mass. 159, 171 n.10 (1979).

[10] The judge charged as follows: "To figure out the award of damages, you will need to make some calculations. I would suggest that you set up two columns. In the first column determine how much profit Curtiss-Wright would have made if they had gotten the contract. And, in the second column, determine how much profit Edel-Brown *will make* on its government contract. Compare the two figures on the bottom of each column; make your award the larger of the two figures" (emphasis supplied).