Leibensperger, Edward P., J.
Defendant, Welch Allyn, Inc., allegedly misappropriated confidential business information belonging to plaintiff OBP Corporation. The confidential business information was a list of OBP’s customer names, along with confidential sales information. Welch Allyn obtained the confidential information from Owens & Minor, Inc., OBP’s primary distributor. Welch Allyn allegedly used the confidential business information to craft a marketing plan intended to steal OBP’s customers and to eliminate OBP as a competitor in the market for a self-illuminating, disposable vaginal speculum. Welch Allyn now moves to dismiss OBP’s First Amended Complaint (Amended Complaint) pursuant to Mass.Civ.P. 12(b)(6). For the reasons that follow, the motion is DENIED.
*30 BACKGROUND
The following comes from the allegations, taken as true, In OBP’s Amended Complaint.
OBP sells a variety of medical examination instruments to hospitals and physician offices, including a self-illuminating disposable vaginal speculum. It generates its customers through direct marketing and sales efforts, and sells its products by entering into pricing agreements directly with individual customers and with group purchasing organizations (GPOs) acting on behalf of hospital systems and/or physician’s offices. The individual customer agreements identify OBP’s customers and the prices OBP negotiated directly with them. Similarly, the GPO agreements identify the prices OBP negotiated with the GPOs and include provisions indicating that the terms of the agreement are confidential.
Since June 2011, OBP has used Owens & Minor to fulfill orders from OBP’s customers. In connection with this service, Owens & Minor stocks its distribution centers with OBP products. Owens & Minor orders products directly from OBP at an agreed upon unit price based on demand from OBP’s customers. When Owens & Minor fulfills customer orders, it charges customers according to the terms set forth in OBP’s pricing agreements with the customers. OBP reimburses Owens & Minor through “rebates” for any difference between that price and the fixed price Owens & Minor pays to OBP. As part of this process, OBP provides copies of the relevant pricing agreements to Owens & Minor. In return for its fulfillment services, OBP pays Owens & Minor an administrative fee.
Owens & Minor operates pursuant to a Code of Honor, made publicly available on its website, in which it states that the customer and sales information of suppliers like OBP will not be disclosed to third parties and will only be used for purposes of effectuating the parties’ business relationship. The Code of Honor specifically provides that:
[a]ll Company records and information related to the Company, its customers, suppliers and teammates is confidential . . . [and] no teammate or director of the Company may provide or disclose confidential or proprietary information to anyone outside the Company (or even within the Company except to teammates who need to know such information to perform their work) or use such information other than in conducting the Company’s business.
Code of Honor at 9. The Code defines “confidential information” as “any information that has not been disclosed to the public” including “customer lists, contracts, pricing and purchase information,” “supplier lists, contracts, pricing and product information,” and “all written or verbal agreements between the Company and its teammates, customers, suppliers, strategic partners, agents and other third parties.” Id. at 9-10.
In November 2014, Welch Allyn, a global manufacturer of medical diagnostic equipment, introduced a self-illuminating disposable vaginal speculum that competes with OBP’s product. About a month before it did so, Welch Allyn obtained from Owens & Minor a spreadsheet referred to as an “opportunity report.” The opportunity report lists OBP’s customer and sales information associated with OBP’s vaginal speculum. The report specifically identified the names and addresses of 582 customers who had ordered OBP’s vaginal speculum through Owens & Minor and the annualized sales totals for each of these customers. OBP alleges that this information came from the pricing agreements it shared with Owens & Minor on a confidential basis.
After receiving the opportunity report, Welch Allyn employees exchanged several emails concerning the information. In one email dated November 7, 2014, Welch Allyn’s Director of Channel Management and Marketing wrote: “When we use this, let’s not be blatant about where we got the info. I don’t want Owens to have problems with OBP, they may get their feathers ruffled if they find out that Owens provided the list to us. Let’s just tread carefully here.” In a second email dated November 18, 2014, Welch Allyn’s Product Manager for Vaginal Speculums explained: “It’s rare that we are given a list of customers that are buying a known competitor ... I just wan[t] to make sure we try to take advantages in 2014.” In yet another email sent two days later, Welch Allyn’s Vice President of Acute Care wrote to Sales Managers: “I wanted to reach out to you on some targeted efforts surrounding the launch of our new LED vag spec. I’ve attached a list of accounts using the OBP spec and their respective volumes. (.This list was supplied by Owens & Minor and should be treated as highly confidential. This shouldn’t be emailed out or sent to anyone else.)” (Emphasis in original.)
Welch Allyn ultimately used the information from the opportunity report to craft a marketing plan allegedly intended to steal OBP customers and eliminate OBP as a competitor in the market for the single-use medical examination instrument. The marketing campaign was coordinated with a patent infringement lawsuit Welch Allyn filed against OBP in September 2014. In the lawsuit, Welch Allyn claimed that OBP’s vaginal speculum infringed on a Welch Allyn patent and that OBP unlawfully copied Welch Allyn’s color coded trade dress. In an email dated December 3, 2014, Welch Allyn’s Product Manager for Vaginal Spec-ulums explained that:
The faster we can move customers over from OBP, the more impact we also have on the litigation effort with regard to potential settlement. We want to disrupt OBP business and growth as quickly as possible. I suggested a back pocket offer for initial *31 discount with larger purchase (end user). While I know we don’t typically want to discount a new product, in this case business disruption may save us litigation costs.
Two months after this email was sent, in February 2015, Welch Allyn began offering what it called the “OBP Back Pocket Offer” — an offer to provide OBP customers with a free reusable light (having a retail value of $300) for use with the Welch Allyn vaginal speculum. The offer significantly reduced the cost of Welch Allyn’s speculum. Around this time, Welch Allyn also began sending sales representatives to hospital departments where OBP had long sold its products.
In May 2016, OBP brought this action against Welch Allyn. OBP alleges that the customer and sales data that Owens & Minor provided in the opportunity report was confidential and that Welch Allyn wrongfully obtained and used this information in connection with the launch of its self-illuminating vaginal speculum. OBP’s Amended Complaint asserts claims for common law misappropriation of confidential business information (Count I), statutory misappropriation of confidential business information (Count II), conversion (Count III), unjust enrichment (Count IV), violations of c. 93A (Count V), and interference with business relations (Count VI). Each claim is based on Welch Allyn’s alleged receipt and use of OBP’s confidential customer information.
ANALYSIS
Welch Allyn moves to dismiss the Amended Complaint in its entirety pursuant to Mass.R.Civ.P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief ...” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Although the complaint need not set forth detailed factual allegations , a plaintiff is required to present more than labels and conclusions and must raise a right to relief “above the speculative level.” Id.
To prevail on a claim of misappropriation of trade secret or confidential business information, a plaintiff must show that it: (1) possessed a trade secret or-confidential business information; (2) took reasonable steps to preserve the secrecy of that trade secret or confidential business information; and (3) the defendant breached a duty not to disclose or use the trade secret or confidential business information. See, Peggy Lawton Kitchens, Inc. v. Hogan, 18 Mass.App.Ct. 937, 939 (1984). Welch Allyn argues that OBP’s misappropriation claims must be dismissed because OBP’s Amended Complaint fails to assert facts satisfying any of these elements. Specifically, it contends that the Amended Complaint does not allege sufficient facts to show that: (1) the customer and sales information in the opportunity report belonged to OBP rather than to Owens & Minor; (2) OBP took appropriate steps to ensure the confidentiality of the customer and sales information; and (3) Welch Allyn had a duty to refrain from using the customer and sales information. Welch Allyn further argues that these reasons also justify dismissal of OBP’s other claims for conversion, unjust enrichment, violation of c. 93A, and interference with business relations.[1]
A. Ownership of the Customer and Sales Information
Welch Allyn’s first contention fails because the Amended Complaint affirmatively alleges that OBP owned the information in the opportunity report. Specifically, the Amended Complaint alleges that the content of the opportunity report came from the customer names and pricing information in OBP’s pricing agreements and that OBP provided those agreements to Owens & Minor on a confidential basis for the sole purpose of facilitating Owen & Minor’s fulfillment services. Taking these allegations as true, OBP adequately pleads ownership of the confidential customer and sales information found in the opportunity report.
B. Efforts to Preserve Confidentiality
Welch Allyn’s second contention fails because Amended Complaint adequately pleads that OBP took reasonable steps to keep its customer and sales information confidential, such as by not making the information publicly known outside its business and by employing password protected computers and employee agreements to protect against disclosure. See, Optos, Inc. v. Topcon Med. Sys., 777 F.Sup.2d 217, 240 (2011). In making its argument, Welch Allyn stresses that OBP has not alleged that it entered into a nondisclosure or confidentiality agreement with Owens & Minor restricting the use of the information contained in the opportunity report. The lack of such an agreement, however, is not fatal to OBP’s misappropriation claims.
In the absence of a confidentiality agreement, a confidential relationship will be implied where the facts demonstrate that the disclosures were made to facilitate a specific relationship such as that between employer and employee, purchaser and supplier, or prospective licensee and licensor. See, Burten v. Milton Bradley Co., 763 F.2d 461, 463 (1st Cir. 1985). The Amended Complaint alleges that Owens & Minor’s role was to fulfill orders from customers that OBP generated through its direct marketing and sales efforts. It further alleges that in order to facilitate Owens & Minor’s fulfillment services, OBP was required to provide Owens & Minor with the identity of its customers and the terms of its customer pricing agreements. These allegations suggest that the disclosures of OBP’s customer and sales information were made in order to promote the supplier/distributor relationship between Owens & Minor and OBP, and that therefore a confidential relationship should be implied.
*32 That such implication is appropriate is bolstered by the fact that Owens & Minor’s Code of Honor, promoted on its website, specifically provides that it will not disclose customer and sales information of suppliers like OBP to third parties and will only use such information for purposes of effectuating the parties’ business relationship. The presence of the Honor Code on Owen & Minor’s website plausibly suggests that OBP took reasonable steps to preserve the confidentiality of its customer information.
C. Duty Not to Use the Customer and Sales Information
Welch Allyn’s third argument, that the Amended Complaint fails to demonstrate a breach of a duty to not use OBP’s customer and sales information, is also without merit. “Under Massachusetts trade secret law, a third parly who knowingly benefits from a trade secret which a person in a confidential relationship obtained from the plaintiff is liable to the plaintiff for the misappropriation of that trade secret.” Data Gen. Corp. v. Grumman Sys. Support Corp., 795 F.Sup. 501, 507 (D.Mass. 1992); see also, Optos. Inc., 777 F.Sup.2d at 240 (“A party who knowingly benefits from the breacher’s trade secret bounty is also liable”); Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 381 Mass. 1, 3 n.2 (1980) (observing that when a purchaser provides a competitor with a supplier’s confidential plans and specifications, “[rjelief may be had against [the] competitor despite the lack of any legal relationship between the competitor and the supplier whose plans were appropriated”). To recover, a plaintiff need show that the third party had actual or constructive notice that the information it obtained and used was a trade secret. See, Curtiss-Wright Corp., 381 Mass. at 5-6 & n.4.
In the present case, the Amended Complaint states a claim for misappropriation against Welch Allyn despite the absence of allegations that Welch Allyn and OBP themselves had a confidential relationship. The Amended Complaint alleges that it is well known in the medical instrument industry that customer and sales information is not public information. It also quotes internal Welch Allyn emails from November 7, 18 and 20, 2014, suggesting that Welch Allyn knew (1) the information it received from Owens & Minor was highly confidential, (2) receipt of such information was extremely rare, and (3) Owens & Minor could get in trouble if OBP discovered the disclosure. Taken together, these allegations plausibly suggest that Welch Allyn had either constructive or actual notice that it was in possession of OBP’s confidential business information and therefore had an obligation to refrain from using the information to compete with OBP. See, Curtiss-Wright Corp., 381 Mass, at 5-7 (holding that a defendant supplier who received plaintiffs confidential drawings from the Navy and used them to win a Navy bid was properly held liable because the supplier knew, or should have known, that it had received the plaintiffs trade secrets).
CONCLUSION
For the reason stated above, Welch Allyn, Inc.’s Motion to Dismiss Plaintiffs First Amended Complaint is DENIED.

 Because Welch Allyn’s motion to dismiss the misappropriation count is denied, the court declines to consider at this time the separate grounds for Welch Allyn’s motion to dismiss other counts.