ANALOGIC CORPORATION *vs*. DATA TRANSLATION, INC.
& others.

Norfolk.     October 7, 1976. — December 31, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, &
WILKINS, JJ.

*Contract,* Covenant against competition.  *Unfair Competition.   Trade
Secret.   Practice, Civil,* Master.

Federal patent policy did not preclude a State court from permanently
    enjoining a corporation's former employees from making use of
    trade secrets for the benefit of another corporation. [645-646]
Even though equitable relief was warranted against a corporation's
    former employees for their appropriation of its trade secrets, the
    fact that a judge erred in denying the defendants' motion to compel
    a master to append to his report expert testimony as to the amount
    of time needed to engineer in reverse a device manufactured by the
    corporation resulted in a record with insufficient evidence from

which to determine whether a permanent injunction against manufacture of the device by the defendants was necessary to protect the corporation's interests. [646-649]
In a civil case there was no merit in the defendants' contention that a master received information prejudicial to the defendants during a telephone conversation with the plaintiff's attorney. [649-650]

BILL IN EQUITY filed in the Superior Court on February 6, 1974.

The suit was heard by *Brogna*, J., on a master's report.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Louis Orenbuch* for the defendants.
*Julian Soshnik* for the plaintiff.

REARDON, J.  Analogic Corporation (Analogic) brought a suit in equity against Data Translation, Inc., Alfred Molinari, Aaron Fishman and James Neil Forster charging them with having used Analogic's trade secrets and proprietary rights in manufacturing and selling a high speed data acquisition module alleged to be a copy of the "MP 6912" module constructed and marketed by Analogic. The plaintiff sought injunctive relief and damages. A judge confirmed a master's report and entered judgment for the plaintiff in the amount of $12,714.75, together with interest thereon at the rate of six per cent and its costs of action, and ordered that the defendants be permanently enjoined from the manufacture, sale or distribution of those modules employing any of the electronic circuitry contained in Analogic's "MP 6912." Three of the defendants, Data Translation, Inc., Alfred A. Molinari, and Aaron J. Fishman, have appealed from the judgment as well as from various orders of the trial judge, several of which relate to the master's report.

The defendants complain in particular of the alleged conduct of the master in receiving information in a private discussion with Analogic's lawyer with regard to statements made by the parties in settlement negotiations. Relative to this complaint, a violation of Canon 3 (A) (4) of

the Code of Judicial Conduct, S.J.C. Rule 3:25, 359 Mass. 843 (1972), is alleged.

The master's report sets out the following findings. Analogic employed the defendants Molinari and Fishman during the development of an unpatented, high speed data acquisition module. The development of this device consumed some eighteen months and over $100,000. Thereafter Molinari resigned at the plaintiff's request. Fishman subsequently left the plaintiff's employ on his own motion. These two defendants then met with the defendant James Neil Forster to form Data Translation, Inc., for the purpose of creating a data acquisition module similar in all respects to that of Analogic. At the time of the departure of Fishman and Molinari from Analogic they signed statements indicating that they were not taking with them any documents or any material belonging to Analogic. However, utilizing documents, drawings and a sample of the plaintiff's module "MP 6912," the defendants were able to create a copy of a module in a few months at a cost of approximately $2,500. They then commenced marketing module DT 1610 at a price comparable to, or less than, that of the "MP 6912." The master found that none of the individual defendants was capable of designing such a module in less than one year without use of their special knowledge of the "MP 6912," and that the defendants Molinari and Fishman violated their agreements with the plaintiff in using data and documents belonging to the plaintiff.

1. We first consider the defendants' argument that the State has intruded into an area preempted by Federal patent policy by virtue of the perpetual injunction enjoining the defendants from making and selling an article that is on public sale and which allegedly can readily be duplicated by reverse engineering. This claim ignores, however, the fundamental distinction between Federal patent law and the State law of trade secrets. *Kewanee Oil Co.* v. *Bicron Corp.*, 416 U.S. 470, 489-490 (1974). Just as the copyright clause, art. 1, § 8, cl. 8, of the United States Constitution, does not bar the States from providing protec-

tion of a copyright nature in all circumstances, *Goldstein v. California,* 412 U.S. 546, 560 (1973), so the Supreme Court of the United States has held that "[n]othing in the patent law requires that States refrain from action to prevent industrial espionage. In addition to the increased costs for protection from burglary, wiretapping, bribery, and the other means used to misappropriate trade secrets, there is the inevitable cost to the basic decency of society when one firm steals from another. A most fundamental human right, that of privacy, is threatened when industrial espionage is condoned or is made profitable; the state interest in denying profit to such illegal ventures is unchallengeable." *Kewanee Oil Co.* v. *Bicron Corp., supra* at 487. While the States may not forbid the copying of unpatented articles by outsiders, *Compco Corp.* v. *Day-Brite Lighting, Inc.,* 376 U.S. 234, 237 (1964) (see *Sears, Roebuck & Co.* v. *Stiffel Co.,* 376 U.S. 225 [1964]), they may properly protect the holder of a trade secret "against the disclosure or unauthorized use of the trade secret by those to whom the secret has been confided under the express or implied restriction of nondisclosure or nonuse." *Kewanee Oil Co.* v. *Bicron Corp., supra* at 475. We conclude that there is no bar, constitutional or otherwise, to the issuance of a permanent injunction against the unauthorized use of confidential business information.

2. We do not terminate our inquiry here, however, for a determination must be made whether the law of this Commonwealth authorizes a permanent injunction on the facts of this case. The master found that the defendants' success in producing their data acquisition module "was not the result of skill and intelligence acquired or increased and improved through experience acquired in the course of employment by Analogic or other employers" but, rather, was due to the use of proprietary information and trade secrets of Analogic in creating a copy of the plaintiff's device. The master further found that in so doing Fishman and Molinari violated the terms of their employment agreement with Analogic and that Forster knowingly entered into the arrangement with the other defendants.

The master's findings must stand for they are neither inconsistent, contradictory nor plainly wrong. *Blanchette* v. *Blanchette,* 362 Mass. 518, 521 (1972). We thus agree with the trial judge that equitable action is warranted on the facts of this case. It is well settled in this Commonwealth that a covenant restricting trade or competition will be enforced if it "is reasonably limited in time and space, and is consonant with the public interest." *Novelty Bias Binding Co.* v. *Shevrin,* 342 Mass. 714, 716 (1961). We have previously indicated that these considerations should also influence the terms of injunctions granted to prevent trade secret violations, noting, for example, that the injunction must be reasonable as to time. *New England Overall Co.* v. *Woltmann,* 343 Mass. 69, 78 (1961). The same requirement has been imposed in other business situations not directly involving trade secrets, *Childs* v. *Sherman,* 351 Mass. 450 (1966). In our opinion the judge may appropriately consider the requirement whenever he exercises his equitable discretion to restrain unfair competition. Of course an injunction is not unreasonable merely because it is permanent, *Tobin* v. *Cody,* 343 Mass. 716 (1962), and what is reasonable will depend in each instance on the facts in the particular case. *Novelty Bias Binding Co.* v. *Shevrin, supra* at 716, and cases cited. It appears that the master in his findings has omitted certain facts essential to our proper review.

The record as it reaches us provides insufficient evidence from which to determine whether a *permanent* injunction is necessary to protect the plaintiff's business interests. While it is settled law that "[a]n invention may be placed in 'public use or on sale' ... without losing its secret character," *Kewanee Oil Co.* v. *Bicron Corp., supra* at 484 n.13, a device which has been described in trade journals and placed on the market is generally open to duplication by skilled engineers. We accept the master's finding that the defendants' unit was based on misappropriated trade secrets. We rule, however, that expert testimony as to the amount of time needed to engineer in reverse the plaintiff's device is relevant in determining a reasonable dura-

tion of the defendants Molinari's and Fishman's covenants not to divulge confidential information, and in fixing an appropriate length of time for the final injunction in this litigation.[1] Thus it was error to deny the defendants' motion to compel the master to append to his report a summary of such expert testimony.[2] Similarly, the judge should have considered the defendants' evidence that other manufacturers have been able to design and produce devices nearly identical to Analogic's "MP 6912."[3]

Our holding today is not to be interpreted to require that the duration of an injunction be inflexibly determined by the amount of time necessary to reverse engineer the plaintiff's device without improper use of trade secrets. But evidence as to this time period is one factor which should be considered in determining the reasonableness of

---

[1] It is doubtful that the master had sufficient evidence to enable him to rule conclusively on this point. In subsidiary finding No. 51, he reported that "there are only 40-50 electronic engineers in the world who have the experience, background and ability to design and develop a basic high speed data acquisition system module of the.size, complexity and accuracy of the MP 6912, with the pin compatible connections, at the price of about $695., starting from 'scratch' and without the special knowledge of the parts, costs of parts, culling standards used, why certain connections were made, error budget, manufacturers and other information not published, in less than one year, which unit would work according to specifications and planning. I further find that Mr. Gordon is in this class, but that Fishman, Molinari and Forster are not in this class."

This finding is not conclusive as to the amount of time needed to duplicate the plaintiff's device. First, the reference to "starting from 'scratch' " is ambiguous. The defendants had no right to employ proprietary information but clearly were entitled to work from devices available on the open market. Second, the quoted passage does not consider whether the unit could have been copied in some period longer than a year. Indeed, finding No. 55 expressly states that "Fishman and Molinari did possess skill, knowledge and experience necessary to build a similar product at some time, after many, many months of time and efforts and expenditures of $100,000 or more . . . ." We thus conclude that additional findings on this issue are required.

[2] Although this contention was insufficiently argued at the trial level, the plaintiff is not unduly prejudiced by our consideration of it here.

[3] Although the trial court does, of course, have discretion to decline to reopen a case for the purpose of receiving new evidence, we think that on these facts the better practice would have been to accept this proof.

the scope of such an injunction. Of course, defendants who have wilfully attempted to profit through violation of a confidential relationship need not be placed in as good a position as other, honest competitors. "[T]he tendency of the law, both legislative and common, has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade. The tendency still persists." Restatement of Torts c. 35, Introductory Note at 540 (1938). The plaintiff is entitled to have its trade secrets protected at least until others in the trade are likely, through legitimate business procedures, to have become aware of these secrets. And even then the defendants should not be permitted a competitive advantage from their avoidance of the normal costs of invention and duplication. Where the defendants have saved substantial expense by improperly using confidential information in creating their product, the ultimate cessation of an injunctive order might well be conditioned on their payment of an appropriate sum to the plaintiff. We mention this possibility to remind the lower courts of their creative equitable powers, and in no way intend to limit the scope of judicial discretion on remand.

3. The defendants contend that the court did not apply the correct measure of damages. This issue was not raised in the court below and, thus, is not properly before us on this appeal. *American Coated Fabrics Co.* v. *Berkshire Apparel Corp.,* 361 Mass. 165, 168 (1972). *Socony Mobil Oil Co.* v. *Cottle,* 336 Mass. 192, 196 (1957). We have however examined the master's report and find no error in this regard. The master determined that the average cost to produce an Analogic "MP 6912" was $250. In calculating damages the master treated this $250 as the average cost of the defendants' devices as well. We feel that this approach was not improper, given the defendants' failure to offer other proof on this matter and considering the master's findings that the defendants' models were based extensively on proprietary information taken directly from the plaintiff.

4. Finally we comment on the argument that the defend-

ants make concerning the conduct of the master in holding "a private telephone discussion with Analogic's attorney in which he received information prejudicial to the defendants' cause." In an affidavit furnished by the master he explains that the telephone call and his subsequent letter stemmed from his endeavors to set a date for further hearings on a case which had already consumed "many days of hearings." In denying a motion for a new trial, based on the defendants' complaint, the judge found nothing improper in the master's telephone communication, particularly in view of the fact that it was imperative that the matter be concluded speedily for several reasons. It would appear that the questioned communication was not designed to influence the master's action in his capacity as such and, hence, was not a violation of S.J.C. Rule 3:25, 359 Mass. 841 (1972). The record indicates an attempt on the part of the master to terminate a complicated and technical case involving hearings covering twenty-five days. It nonetheless is in order to issue a word of caution to those presiding, as did this master, over matters which have been referred to them for hearing. Care should be exercised not only that no semblance of partiality be displayed but that no opportunity be offered to any party to assert that it was. Rule 3:25 provides adequate guidance in this regard.

5. It follows that the matter is to be remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*