**Norman PRESCOTT, Plaintiff,**

v.

**MORTON INTERNATIONAL, INC., Defendant.**

**Civ. A. No. 89–907–S.**

United States District Court, D. Massachusetts.

Dec. 19, 1990.

George T. O'Brine, Salem, Mass., for plaintiff.

James E. McGuire, Stanley W. Wheatley, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SKINNER, District Judge.

This diversity action concerns the development and production of a shipping cylinder for metalorganics, known as a bubbler. The plaintiff has asserted claims for conversion of trade secrets, fraud, violation of the Massachusetts Consumer Protection Act, breach of an implied-in-fact contract, and interference with an advantageous relationship. The defendant has moved for summary judgment on all counts.

The party moving for summary judgment must affirmatively demonstrate the absence of a genuine issue of material fact. The opponent, on the other hand, "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). I must view the record in the light most favorable to the opponent of the motion and must indulge all inferences in his favor. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988).

Beginning in 1980, the parties had discussions that culminated on May 4, 1982 in a purchase order by Morton, for 500 bubblers. The discussions involved the presentations of design drawings by Prescott, containing a proprietary statement. During the discussions, Morton's agents and Mr. Prescott made suggestions and changes in the design of the bubblers. Mr. Prescott operated through two corporations, Accrue and Denmar Precision Machine. Upon receipt of Morton's order, Accrue issued a purchase order to Denmar for the bubblers. Denmar produced the 500 bubblers and delivered them to Morton in

August or September 1982. Pursuant to the purchase, a warranty agreement ran to Morton from Accrue, Denmar, Mr. Prescott and Mr. Duane Eagan, a partner of Mr. Prescott. On the transaction, Prescott and Eagan were paid a commission of $20 per bubbler by Denmar.

On December 9, 1982, Morton filed an application for a patent on the bubbler. In 1984 Morton made a second order directly from Denmar. Denmar began producing the second batch on April 11, 1984. Mr. Prescott received a commission on the second order from Denmar. During the production, Mr. Prescott visited Denmar and saw some of the bubblers, including words etched on the cylinder. He recalls seeing the labeling required by the Department of Transportation, but not the words "patent pending." In mid–1984, Morton informed Mr. Prescott that it had developed another supplier for a bubbler, who would not pay Mr. Prescott a commission. Mr. Prescott interpreted this to mean that they were using a different kind of bubbler. Prior to 1982, Morton had used the Whitey bubbler.

Mr. Prescott filed his complaint on March 24, 1989 in Massachusetts Superior Court. The initial complaint pleaded fraud, mail fraud, and violations of M.G.L. c. 93A, § 2, based on Mr. Prescott's alleged trade secret in the design of the bubbler. The present legal theories were asserted by Mr. Prescott in his Amended Complaint of February 26, 1990. The present legal theories arise from the same occurrence and assert basically the same claim as initially asserted in Superior Court: an unlawful taking of Mr. Prescott's intellectual property and the concomitant damages. The claims asserted in the Amended Complaint relate back to the original filing on March 24, 1989 for the purposes of the statutes of limitation. *See Williams v. Trustees of New York, N.H. & H.R. Co.,* 325 Mass. 244, 90 N.E.2d 320 (1950).

*Statute of Limitation under M.G.L. c. 260, § 2A*

■ Under Massachusetts law, an action in tort is governed by a three year statute of limitation. Mr. Prescott has asserted three tort claims: common law fraud, tortious interference with advantageous relationships, and the Massachusetts statutory trade secret claim, M.G.L. c. 93, § 42.

The three tort claims assert that Morton misappropriated Mr. Prescott's trade secret, used it to manufacture bubblers, and patented it to exclude Mr. Prescott from using it. The patent was granted on March 26, 1985. At the time, Morton had totally and publicly appropriated the construction of the bubbler to itself. The patent fully disclosed the bubbler, thereby destroying any trade secret in its construction. The patent created the obstacle that prevented Mr. Prescott from selling the bubbler to customers.

■ The First Circuit has concluded that the issuance of a patent makes a conversion of a trade secret presumptively knowable and thus starts the clock running on the statute of limitation. *Wise v. Hubbard,* 769 F.2d 1, 2–3 (1st Cir.1985). Consequently, if the issuance of the patent is the final act of conversion, fraud, and interference, the tort actions would be time barred. The time between the issuance of the patent and the filing of the original complaint is greater than three years.

Plaintiff asserts that the conversion, fraud, and interference are continuing torts that did not conclude upon the issuance of the patent. The breaches of duty constitute a "continuing tort" because defendants have exploited the patent embodying the plaintiff's idea up to the present. The exploitation is a continuation of the conversion, fraud, and interference. Defendant, citing dicta in *White's Farm Dairy, Inc. v. De Laval Separator Co.,* 433 F.2d 63 (1st Cir.1970), contends that Massachusetts recognizes only trespass and nuisance as continuing torts.

■ Many jurisdictions have struggled with the question whether "each successive use or disclosure [is] a breach or a tort, or does the wrong become frozen, for statute of limitation purposes, on the date of the initial breach or wrong?" R. Milgrim, 2 *Milgrim on Trade Secrets* § 7.04[2], at 7–52 (1990). As Judge Keeton noted in the *Wise* district court opinion, no Massachu-

setts cases are on point and the question is a difficult one. *Wise v. Hubbard*, No. 84–1498–K, slip op. at 6 (D.Mass. Dec. 7, 1984). The Ninth Circuit has interpreted California's code of civil procedure to recognize only the initial breach of the confidential relationship and not the continuing use of the information. *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Co.*, 407 F.2d 288 (9th Cir.1969). The D.C. Circuit, on the other hand, has held that continuing use is a continuing tort, even if the misappropriator has put the matter in the public domain. *Underwater Storage, Inc. v. U.S. Rubber Co.*, 371 F.2d 950 (D.C.Cir.1966), *cert. denied*, 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967). The court reasoned that the misappropriator may not cleanse itself of the wrongful use of the trade secret by making it publicly known. The New York Court of Appeals ruled that "the continued and successive breaches ... give rise to a new cause of action and the period of limitation begins to run anew from the date of each breach. In the instant case there is no total and complete breach which gives rise to the cause of action only at the moment of the breach." *General Precision, Inc. v. Ametek, Inc.*, 20 N.Y.2d 898, 232 N.E.2d 862, 285 N.Y.S.2d 867 (1967). The total and complete breach exception, freezes the wrong when the property is not merely interfered with, but destroyed or converted. A trade secret is totally and completely destroyed by a patent. *M & T Chemicals, Inc. v. International Business Machines Corp.*, 403 F.Supp. 1145 (S.D.N.Y.1975), *aff'd without op.*, 542 F.2d 1165 (2nd Cir.1976), *cert. dismissed*, 429 U.S. 1030, 97 S.Ct. 656, 50 L.Ed.2d 637 (1976).

■ Judge Keeton declined to apply *Underwater Storage* for the continuing use of a patent. He reasoned that to allow the plaintiff to sue for the continued use of patented information would undermine the established rule that issuance of a patent constitutes notice to the world. The First Circuit did not address the issue of continuing use squarely, but affirmed Judge Keeton's order finding that the statute of limitation had lapsed.

The *Underwater Storage* concern, that misappropriators not "baptize" themselves of their wrongdoing by patenting the ill-gotten information, appears compelling at first glance. State legislatures, however, have recognized that even wrongdoers must be protected from stale lawsuits. The issuance of the patent gives notice to the world that the patentee claims exclusive ownership of the information. The trade secret is destroyed completely and the original possessor is prevented from using it by the threat of a patent infringement suit. But the patentee is not "baptized" of its prior wrongdoing. The original possessor of the information still has the enacted period of time to bring suit against this knowable wrong, just as with other torts. For these reasons, the use of patented information is neither continued misappropriation of trade secrets, nor continued fraud, nor continued interference with advantageous relationships. The plaintiff's claims for those tort actions are barred by the statute of limitation.

*Consumer Protection Act, M.G.L. c. 93A, § 11*

■ The Consumer Protection Act, M.G.L. c. 93A, § 11, provides a cause of action for persons engaged in trade or commerce against another such person who engages in an unfair method of competition or in an unfair or deceptive act or practice. Section 11 has been applied by Massachusetts courts to misappropriation of trade secrets. *See, e.g., Peggy Lawton Kitchens, Inc. v. Hogan*, 18 Mass.App.Ct. 937, 466 N.E.2d 138 (1984). The standards for finding misappropriation of a trade secret provide the criteria for finding an unfair or deceptive act.

*Statute of Limitation*

The period of limitation governing § 11 is four years. M.G.L. c. 260, § 5A. Sections 5A governs only "[a]ctions arising on account of violations of any law intended for the protection of consumers, including ... Chapter 93A...." Although this statute of limitation invokes the protection of consumers, it has been applied to § 11 ac-

408

tions between persons engaged in trade or commerce. *See, e.g., Duco Associates, Inc. v. Lipson,* 11 Mass.App.Ct. 935, 416 N.E.2d 555 (1981) (rescript opinion). The four year period prior to the filing of the original complaint dates back to March 24, 1985. The question is whether the misappropriation or conversion of the alleged trade secret occurred within that period or was tolled until that period.

Commentators and courts have struggled with the difficulties of determining when trade secret misappropriation begins. *See* 2 *Milgrim* § 7.04. In determining the time of accrual, two issues arise: whether the jurisdiction embraces a discovery rule and/or whether the jurisdiction embraces a continued use rule. Massachusetts courts have not directly addressed these issues in a trade secrets case.

In awarding damages for loss incurred over a seventeen year period in *USM Corp. v. Marson Fastener Corp.,* 392 Mass. 334, 467 N.E.2d 1271 (1984), the Supreme Judicial Court, however, implicitly accepted either a discovery rule for trade secret cases or a fraudulent concealment theory under M.G.L. c. 260, § 12. Additionally, Massachusetts has recognized a discovery rule in other actions. *See, Franklin v. Albert,* 381 Mass. 611, 619, 411 N.E.2d 458 (1980). As in medical malpractice claims, the injury from misappropriation of trade secrets may be difficult to detect. As a result of the difficulty of detection, "in many jurisdictions the statute will not commence until the plaintiff knew, or by exercise of reasonable diligence, should have discovered the facts giving rise to his claim." 2 *Milgrim* § 7.04[2], at 7–62. In the medical malpractice area, Massachusetts courts do not require discovery of each element of the cause of action, but merely enough suspicious circumstances that would lead a reasonably prudent person to discover the harm. *Malapanis v. Shirazi,* 21 Mass. App.Ct. 378, 487 N.E.2d 533 (1986). Consequently, I will apply the Massachusetts discovery rule to this trade secrets action. Any misappropriation that Mr. Prescott did not reasonably discover until March 24, 1985 is timely brought by this action.

The second issue is whether any act of misappropriation occurred on or after March 24, 1985. As mentioned previously, the problem of whether to look only at the initial breach of duty or at the continued use has split the courts. "[I]s each successive use or disclosure a breach or a tort, or does the wrong become frozen for the statute of limitation purposes, on the date of the initial breach or wrong?" 2 *Milgrim* § 7.04[2], at 7–52. The question is relevant in this case because Morton maintains that Mr. Prescott knew that it was seeking a patent on the disputed bubbler by mid–1984. Mr. Prescott's knowledge or what a reasonably prudent person in his situation would have known still remains a genuine issue of material fact. If Morton is able to prove this fact, then Massachusetts's rejection or acceptance of the continued use doctrine is fundamental. If it rejects continued use, looking only at the initial breach, then Mr. Prescott's knowledge of the breach in mid–1984 would bar this claim. If it embraces continued use, then Mr. Prescott could sue for any breach of duty occurring on or after March 24, 1985. The continued breaches of duty that Mr. Prescott alleges are the continued application for a patent and the receipt of the patent.

The First Circuit Court of Appeals, in attempting to contain the growing number of suits brought under the heading of a continuing tort, differentiates continuing acts and single acts with continuing consequences. *See Altair Corp. v. Pesquera de Busquets,* 769 F.2d 30, 32 (1st Cir.1985). The New York courts, as discussed previously, have used a similar analysis to determine when a trade secrets misappropriation occurs. If the idea is used, but not converted totally or destroyed, then each use creates a cause of action. If the idea is converted, then only one cause of action arises. The distinction reflects the increased ease with which the original possessor of the idea may detect the total conversion of the idea and the concomitant burden placed on the plaintiff to bring the action earlier. In this case, Morton's use of the bubbler design did not convert the

idea until the issuance of the patent disclosed the idea and appropriated the idea for Morton's exclusive use. Consequently, under the New York rule, each use of the idea would create a new cause of action, including and concluding with its final conversion with the grant of the patent on March 26, 1985.

In *Tracerlab, Inc. v. Industrial Nucleonics Corp.*, 313 F.2d 97 (1st Cir.1963), our court of appeals, in remanding the case for a determination of whether fraudulent concealment of the misappropriation had occurred, implied that no new injury had occurred when the defendant had applied for a patent and been granted one. Since 1963, the continued use doctrine has gained support in a majority of jurisdictions, but Massachusetts courts have not directly addressed the application of the statute of limitation to trade secret actions. I will follow the majority rule providing a separate cause of action for the continued application for and granting of a patent encompassing a trade secret. Consequently, Mr. Prescott's Chapter 93A claim is not time-barred for the acquisition by Morton of the patent and for any misappropriation of the alleged trade secrets that he did not reasonably discover until March 24, 1985.

*Substantive Cause of Action*

Morton asserts that no material issue of fact exists that can establish the misappropriation of a trade secret. Specifically, Morton asserts that the design of the bubbler is not Mr. Prescott's trade secret because it is not secret, not his idea, and not original.

By the time Morton is alleged to have misappropriated the bubbler design, the bubblers were being sold to Morton's customers, with Mr. Prescott's permission. The sale of the bubbler to the public allowed anyone to purchase one and copy it, without any trade secret liability. Milgrim hypothesizes a closely analogous case:

> Suppose that A develops a clever household gadget that is not patentable. Suppose further that *B*, a sales representative, evidences an interest in bringing the product to the market. At the precommercial stage, the gadget might be enti-

tled to trade secret protection, and B might be deemed to occupy a confidential relationship with reference to *A*. After public sale, however, and absent contractual restrictions, *B* might be at liberty to purchase the item from *A* use it as samples for the purposes of competitive manufacturing.

1 *Milgrim* § 5.03[4], at 5–108.

Likewise, Morton could have brought the bubbler to another manufacturer to produce it. However, Mr. Prescott alleges that Morton used the design drawings presented by him as proprietary information to manufacture the bubbler. In *Analogic Corp. v. Data Translation, Inc.*, 371 Mass. 643, 358 N.E.2d 804 (1976), the Supreme Judicial Court affirmed the injunction against a misappropriator of confidential information, although the information could be gained by reverse engineering. Other jurisdictions have protected blueprints where the product was publicly released and amenable to reverse engineering. *See generally* 1 *Milgrim* § 2.05[3], at 2–101 n. 15. These jurisdictions, as well as the Supreme Judicial Court, have noted that although these claims are actionable, the damages and injunctive relief are closely linked to the extra-"head start" time that the misappropriator has gained. *See Analogic*, 358 N.E.2d at 808.

Morton's second argument is that any idea that Mr. Prescott introduced did not "possess at least that modicum of originality which will separate it from everyday knowledge." *Dynamics Research Corp. v. Analytic Sciences Corp.*, 9 Mass.App.Ct. 254, 270, 400 N.E.2d 1274 (1980). Morton asserts the only question of fact involves who designed the flat bottom of the cylinder, the compliance of the cylinder with Department of Transportation regulations, and the consolidation of the inlet, outlet, and fill openings in the plug at the top of the cylinder. Morton argues that these facts are not material, because Mr. Prescott admits that a flat bottom is too obvious to constitute the modicum of originality, compliance with public government regulations cannot constitute originality, and consolidation of the openings is required by

the regulations. The argument continues that the features that made the bubbler patentable were introduced by Morton.

■■■■ Mr. Prescott, on the other hand, in his Rule 18 statement, supported by an affidavit and depositions, asserts that he conceived of the idea of using the diaphragm valves, of combining the valving into a single head assembly, of increasing the Teflon coating under the head, of using the flat bottom cylinder, and of using the threaded Teflon dip tube. While the factfinder at trial must weigh the credibility of the contrary evidence, the non-movant on summary judgment must merely set forth specific facts that illuminate differing versions of the truth. Mr. Prescott has stated in an affidavit and depositions that he introduced significant design features to Morton. A trier of fact will determine whether his ideas rose to the necessary level of originality.

*Implied–In–Fact Contract*

Mr. Prescott claims that an implied-in-fact contract arose through his conveyance of design diagrams containing a proprietary statement and Morton's acceptance of the diagrams. Morton disputes the claims on summary judgment on two grounds: the implied contract would contradict their express agreement and no reasonable agreement could be inferred from the actions.

■■■ The only express agreement between the parties is the warranty for compliance with Department of Transportation regulations. Unlike the agreement in *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85, 134 N.E.2d 141 (1956), the warranty does not memorialize their entire relationship. A separate implied-in-fact contract governing the dissemination of information between the parties would not be contradictory.

■■■ An implied-in-fact contract arises from "[c]onduct that would lead a reasonable person in the other party's position to infer a promise in return for performance or promise...." E.A. Farnsworth, *Contracts* § 3.10, at 124 (1982). Morton as-

serts that it would be preposterous to infer from the acceptance of the documents containing the proprietary statement that Morton agreed either to keep the design confidential or to purchase the product only from suppliers who paid Mr. Prescott a commission. Mr. Prescott, however, has submitted letters from several engineering firms stating that they employ proprietary statements to prevent unauthorized use. Viewing the record in the light most favorable to the non-movant, a genuine issue of material fact exists as to whether the parties' conduct would lead a reasonable person in the industry to infer that Morton promised not to use the information in the design plans without authorization.

Accordingly, defendant's motion for summary judgment is allowed as to Counts I, II, and VI and is denied as to Counts III and IV of the Amended Complaint.