Houston, J.

Introduction

The plaintiff, CSC Consulting, Inc. (CSC), filed the underlying complaint alleging misappropriation of trade secrets and confidential business information (Count I); interference with contractual relations (Count II); violation of G.L.c. 93A (Count III); and declaratory judgment (Count IV). Defendant Kirk Arnold (Arnold) now moves for summary judgment on all counts of the complaint and defendant NerveWire, Inc.(NerveWire) moves for summary judgment on Count I of the complaint. For the following reasons, defendant Arnold’s motion for summary judgment is ALLOWED in part and DENIED in part and defendant NerveWire’s motion for partial summary judgment is DENIED.

FACTS

Arnold held the position of President at CSC until she resigned in late January of 2000. Arnold did not have an employment agreement with CSC, nor did CSC ask her to sign any agreement limiting her post-employment activities. Arnold first informed her two superiors at CSC of her departure and then, after receiving their authorization, shared the news with other CSC employees. During her final weeks of employment with CSC, Arnold emphasized that she was leaving for personal reasons and said nothing to disparage CSC or to encourage any other CSC employee to join her at NerveWire. On February 1, 2000, Arnold began working for NerveWire as its Executive Vice President and Chief Operating Officer.
Approximately 4,300 to 4,500 people work for CSC. Each year, approximately 800 people terminate their employment with CSC. A high percentage of the individuals who leave CSC go to work for other companies in the consulting field.
In its complaint, CSC alleges that “(o]n information and belief, the defendant NerveWire has had, and continues to have, unlawful access to trade secrets and confidential business information of CSC Consulting, and has used or disclosed, or intends to use or disclose such trade secrets and confidential information.” (Amended Compl. para. 22.) CSC maintains that Arnold and NerveWire misappropriated “the proprietary methodology known as ‘CSC CatslystTM 4D Path’ that CSC Consulting licenses on a confidential basis to its customers for substantial license fees.” (Amended Compl. para. 23.)

DISCUSSION

This Court grants summary judgment where there are no genuine issues of material fact and where the-moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm'r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17. A party moving for summary judgment who does not carry the burden of proof at trial can prevail by either submitting affirmative evidence negating an essential element of the burdened party’s case or by demonstrating that proof of an element is unlikely to be forthcoming at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
A. Misappropriation of Trade Secrets (Count I)
CSC alleges that Arnold and NerveWire misappropriated a proprietary methodology known as “CSC Catalyst 4D Path.”[2] As a basis for its claim, CSC maintains that NerveWire has advertised a four-stage methodology that is facially similar to CSC Catalyst 4D, and is soliciting the same types of clients for the same types of services that CSC provides in its B2B consulting business. (Black Aff., Ex. 6, p. 10.) CSC further argues that former CSC employees are employed by the same direct competitor, therefore, it is inevitable that confidential and proprietary information will be used and disclosed.
CSC has identified the following proprietary items as trade secrets entitled to protection: “CSC Catalyst, Catalyst 4D, Technology Map, CSC Productivity Toolkit, confidential information about CSC clients, including information developed through the use of the Catalyst and Catalyst 4D, CSC marketing and business plans, and confidential information about CSC employees, including salary information, performance evaluations, and information about their areas of expertise.” (Pl.’s Opp’n p. 11.) For the purposes of this motion, the defendants do not contest that CSC possesses trade secrets. The defendants do assert however, that CSC has no reasonable expectation of proving that NerveWire or Arnold used or disclosed any trade secrets following Arnold’s departure from CSC. Accordingly, the Court will focus its inquiry on whether CSC has sufficiently identified the misuse of trade secrets or proprietary information.
The court’s inquiry into the misuse of trade secrets must focus on the conduct of the defendants. See Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 169 (1979). “The essence of an action for the wrongful use of trade secrets is the breach of the duty not to disclose or to use without permission confidential information acquired from another.” Id. at 165. If Arnold used information that she acquired as a result of her con *537 fidential relationship with CSC, without the permission of CSC, Arnold’s use of the information would be wrongful and she would be liable to CSC in damages. See id. at 169 (holding defendant liable in damages for wrongful use of information); Jet Spray Cooler v. Crampton 361 Mass. 835, 845 (1972). Similarly, if NerveWire knew or should have known that information proffered by former CSC employees consisted of CSC’s trade secrets, NerveWire would have been put on inquiry as to employee’s authority to disclose such information. See Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co. Inc., 381 Mass. 1, 6 (1980) (quoting Restatement of Torts, §757, comment m (1939)).
Looking at the evidence in the light most favorable to the plaintiff, CSC has proffered the following facts in support of its misappropriation claim: in November of 1999 NerveWire was behind schedule in the development of its digital market architecture; former high-level CSC employees joined NerveWire; NerveWire currently advertises a methodology that is facially similar to CSC’s methodology; NerveWire has not produced documentation of the development of tools to build and implement net markets. CSC does not point to any specific materials that were misappropriated, rather CSC alleges that the facts “support a reasonable inference that NerveWire unlawfully bought access to CSC proprietary information, which has been incorporated to some extent in NerveWire’s own methodology.” (Pl.’s Opp’n p. 14.)
1. Arnold
Based on the evidence in the summary judgment record, this Court finds insufficient evidence to establish that Arnold disclosed confidential information gained in her employment with CSC to NerveWire or that it is inevitable that Arnold will rely on such information as she proceeds with her career at NerveWire. Cf. Pepsico, Inc. v. Redmond, Jr., 54 F.3d 1262 (7th Cir. 1995). CSC does not allege that Arnold has in fact threatened to use CSC’s secrets, that Arnold could not help but rely on CSC trade secrets or that Arnold would have difficulty preventing her knowledge of CSC’s proprietary information from infiltrating her work. See id.; Analogic Corp. v. Data Translation, Inc., 371 Mass. 643, 646 (1976). CSC contends that Arnold’s mere acceptance of a similar position at a competitor company makes it inevitable that she will use or disclose trade secret information. If this Court followed the plaintiffs reasoning, any employee who was exposed to confidential information during his or her employment would be barred from working for a competitor, regardless of contractual obligations, based on the mere threat of misappropriation.[3] Even if Massachusetts law permitted a claim of breach to be premised on a theory of inevitable disclosure, the plaintiff has failed to adequately show that Arnold has threatened to disclose CSC trade secrets or that she will eventually do so. See Intertek Testing Services NA, Inc. v. Curtis-Strauss LLC, 2000 WL 1473126 (Super. Ct. Aug. 8, 2000). “The mere fact that a person assume(s) a similar position at a competitor does not, without more, make it ‘inevitable that he will use or disclose trade secret information’ so as to ‘demonstrate irreparable injury.’ ” Pepsico, Inc. v. Redmond, Jr., supra at 1269 (quoting Inc v. Fleischhacker, 823 F.2d 1199, 1207 (7th Cir. 1987)). The plaintiffs have failed to set forth sufficient facts to show that Arnold has gone beyond her right to use her general knowledge, skill, experience, and memory. See Chomerics Inc. v. Ehrreich, 12 Mass.App.Ct. 1, 6-7 (1981); Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 839 (1972).
CSC also contends that Arnold is liable for misappropriation because she knew that former CSC employees hired by NerveWire had access to and were familiar with CSC trade secrets and that disclosure of such information would be wrongful. CSC argues that it remains a question of fact whether former CSC employees disclosed proprietary information to Nerve-Wire and whether Arnold was aware of or complicit when such alleged activities occurred. The Court finds that even if former CSC employees disclosed proprietary information to NerveWire, CSC has failed to establish a basis for imposing individual liability on Arnold.
CSC argues that Arnold need not personally misappropriate trade secrets to be liable; liability would attach if she knew or should have known that proprietary information disclosed by former CSC employees was unlawful. CSC bases its argument on the faulty presumption that as an employee of NerveWire, Arnold would have an affirmative duty to act if she learned of a co-worker’s disclosure. In support of this position, CSC relies on Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., Inc., 381 Mass. 1 (1980). A closer reading of the holding in Curtiss-Wright Corp. reveals that the Court found a viable claim against a competitor corporation where a competitor received proprietary information from a third person, and the competitor knew of the wrongful character of the disclosure. Thus, a factual inquiry remains regarding whether NerveWire is liable to CSC, but in the absence of contractual obligations to CSC, Arnold cannot be held personally liable for the actions of others. See Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 11-12 (1983) (holding fiduciary duty owed during tenure of employment). Therefore, defendant Arnold’s motion for summary judgment as to Count I of the complaint is ALLOWED.

2. NerveWire

CSC “is entitled to have its trade secrets protected at least until others in the trade are likely, through legitimate business procedures, to have become aware of these secrets.” Analogic Corp. v. Data Translation, Inc., 371 Mass. 643, 649 (1976). The facts raised by the plaintiff, viewed generously, permit an inference *538 that NerveWire focused its recruiting on CSC employees because of their confidential knowledge and that NerveWire incorporated improperly attained CSC trade secrets into the development of its B2B services. The determination of whether NerveWire’s methodology is a substantial replica of CSC’s underlying methodology and whether the defendant’s success was due to the use of CSC’s proprietary information and trade secrets constitutes a triable issue of fact. Thus, this Court finds that whether the former CSC employees hired by NerveWire used confidential information gained in the course of their employment with CSC and whether NerveWire acquired the methodology by honest means constitutes an issue of fact, thereby precluding summary judgment. See Junker v. Plummer, 320 Mass. 76, 79-80 (1946). Accordingly, defendant NerveWire’s' motion for summary judgment as to Count I of the complaint is DENIED.
B. Intentional Interference with Contractual Relations (Count II)
To establish a claim for intentional interference with contractual relations, CSC must prove that: (1) CSC had a contract with a third party; (2) Arnold knowingly induced the third party to break that contract; (3) Arnold’s interference, in addition to being intentional, was improper in motive or means; and (4) CSC was harmed by Arnold’s actions. See Wright v. Shiners Hospital for Crippled Children, 412 Mass. 469, 476 (1992). CSC contends that a genuine issue of fact exists regarding Arnold’s conduct with respect to the hiring of Smith and eighteen former CSC employees, and therefore, summary judgment is inappropriate.
The evidence in the record indicates that Arnold negotiated with Smith, who represented himself, as well as two other CSC employees, in the negotiations.[4] In a presentation to NerveWire, Smith proposed a value proposition that included a headcount of between fifteen and thirty additional people. CSC maintains that Smith’s conduct violated an implicit or explicit obligation to CSC on behalf of NerveWire by “misusing his top managerial position to solicit away other key CSC employees.” CSC argues that Arnold’s involvement with Smith’s dereliction of his duty to CSC makes her liable to CSC for intentional interference with a contract or advantageous business relationship. Whether or not Smith violated an obligation to CSC and what role if any Arnold played in the breach of Smith’s duty of loyalty to CSC constitutes a disputed issue of fact. See Augut, Inc. v. Aegis, Inc., 409 Mass. 165, 173 (1991).
In addition, CSC argues that as the former president of CSC, Arnold “cannot deny awareness that each of the former CSC employees had an employment relationship with CSC, nor can she deny at least constructive knowledge that these employees were likely to have nonsolicitation, nondisclosure, and / or non-compete agreements. ” (Pl. ’s Opp’n p. 18.) Arnold contends that at the time NerveWire hired the following former CSCemployees: ChrisRennie, Teddy Wang, Melissa Galbraith-Towns, LizGoodchild, Scott Smith, Jamie Solomon, Ron Raymond and JeffVolzer, she was not aware of any contractual obligations owed to CSC by these individuals. CSC alleges that Teddy Wang violated his non-solicitation agreement with CSC by referring employees to NerveWire and Jeff Volzer violated his non-competition and non-solicitation agreement. CSC argues that Arnold was involved in the hiring of these individuals and is therefore liable for intentional interference. Whether Arnold possessed the requisite level ofintent necessary to impose liability constitutes an issue of fact. Accordingly, defendant Arnold’s motionfor summaryjudgment as to Count II of the complaint is DENIED.
C. General Laws c. 93A, §11 (Count III)
In light of the foregoing finding that the question of intentional interference with contractual relations is for the jury, this Court reaches the same conclusion as to the related G.L.c. 93A claim. See G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 277 (1991). Accordingly, defendant Arnold’s motion for summary judgment as to Count III of the complaint is DENIED.
D. Declaratory Judgment (Count IV)
In light of the foregoing findings, defendant Arnold’s motion for summary judgment as to count IV of the complaint is DENIED.

ORDER

It is hereby ORDERED that defendant Kirk Arnold’s motion for summary judgment be and hereby is ALLOWED as to Count I of the complaint and DENIED as to Counts II, III and TV of the complaint.
It is hereby ORDERED that defendant NerveWire, Inc.'s motion for partial summary judgment as to Count I of the complaint be and hereby is DENIED.

 The CSC Catalyst 4D path is “a methodology that’s customized and adapted to the Internet business models and technology, and it’s an approach that incorporates the Internet technologies, an interative approach for Internet technology, and allows iteration of strategy, architecture and design in a continuous fashion, as opposed to flow-down method.” (Black Aff. Ex. 5, p. 47.)

 CSC argues that simply holding a similar position at a competing organization renders disclosure of trade secrets inevitable. An individual who holds a high-level position, however, is not necessarily barred from competing. Arnold has the right to use her general skill, knowledge, experience and memory. J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 740 (1970).

 Ron Raymond and Jamie Solomon.