Neel, Stephen E., J.
Plaintiff HX In Boston, LLC, moves for an order enjoining defendants from using allegedly proprietary advertiser information taken from the offices of plaintiffs newspaper, In Newsweekly, by one or more of defendants. Specifically, plaintiff seeks to enjoin defendants’ “initiating, establishing, continuing, maintaining, or renewing any relationship or contact with any person or entity in the advertiser database until further Order of the Court.” Motion, prayers (a) and (c).
Because the parties appearing at the hearing have stipulated to the return of the advertising information,[1] the issue of further use of the physical or electronic form in which that information was taken is moot. Left to be determined is whether the Court should further enjoin the defendants in the manner quoted above. Plaintiff argues that the defendants’ conduct — including alleged solicitation of advertisers for their proposed new weekly newspaper, in competition with In Newsweekly, while defendants were still in the employ of plaintiff — together with defendants’ taking and use of the plaintiffs advertising information over the past several weeks, provides defendants with a wrongful, unfair competitive advantage, and unfairly deprives plaintiff of the “head start” plaintiff otherwise would have over defendant’s new publication, had defendants not engaged in the alleged conduct.
Based upon the following facts presented by affidavits in support of plaintiffs motion, which the Court accepts for purposes of this order only, the Court concludes that plaintiff has established a strong likelihood of success on the merits.[2]
Plaintiff owns In Newsweekly, a weekly newspaper distributed in Boston free of charge. In Newsweekly obtains substantially all of its revenue from advertising, and accordingly devotes significant resources to identifying, developing and maintaining relationships with advertisers. Following plaintiffs purchase of In Newsweekly in November 2006, Berggren became the employee responsible for maintaining contact with those advertisers.
In mid-December 2007, plaintiff became aware that Berggren was “forming a new newspaper and was *546 soliciting In Newsweekly's clients to advertise in it.” Affidavit of Matthew Bank. On January 2, 2008, plaintiffs management confronted Berggren (who initially denied that he was starting a competing publication), and fired him. Within days, the other two defendants, who comprised the remaining advertising sales staff at In Newsweekly, also left.
Shortly after Berggren left on January 2, plaintiff discovered that Berggren had “deleted all but one entry from the Address Book Application” on the Apple operating system on his desktop computer, which contained client names and contact information, together with “notes” in which Berggren had recorded information regarding individual clients’ advertising needs. Affidavit of Dean Burchell, at ¶¶3, 6. Berggren also took information pertaining to “prospects,” i.e., potential new advertisers.
The advertisers listed in the advertiser database accounted for $783,454 in 2007 advertising revenue. The loss of that database “severely hindered [plaintiffs] ability to sell advertising and maintain its relationships with advertisers,” and has “disrupt[ed] . . . service to In Newsweekly’s advertising clients.” Bank Affidavit, ¶14.
Plaintiff filed this action on January 30, 2008.
DISCUSSION
In determining whether further injunctive relief is appropriate, the Court is mindful of the following appellate guidance:
“The crucial issue to be determined in cases involving trade secrets ... is whether the information sought to be protected is, in fact and in law, confidential.” Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972). Since the information could readily be obtained by reading the advertisements and visiting the [plaintiffs] billiard parlor, the judge was correct in denying injunctive relief as to these matters.
. . . The scope of an injunction depends on a comparative appraisal of all of the facts of the case, and what is reasonable will depend in each instance on the particular facts. Analogic Corp. v. Data Translation, Inc., 371 Mass. 643, 647, 358 N.E.2d 804 (1976). Restatement of Unfair Competition §44(2) (Tent. Draft No. 4, 1993). A portion of comment c of §44 of the Restatement is instructive here.
“c. Appropriateness of injunctive relief. Injunctive relief is often appropriate in trade secret cases to insure against additional harm to the trade secret owner from further unauthorized use of the trade secret and to deprive the defendant of additional benefits from its wrongful conduct. If the information has not become generally known, an injunction may also be appropriate to prevent destruction of the plaintiffs rights in the trade secret through a public disclosure by the defendant. If the trade secret has already entered the public domain, an injunction may be appropriate to remedy any head start or other unfair advantage acquired by the defendant as a result of the appropriation. If the defendant retains no unfair advantage from the appropriation, an injunction against the use of information that is no longer secret can be justified only on a rationale of punishment and deterrence. However, because of the public interest in promoting competition, punitive injunctions are ordinarily inappropriate in trade secret actions.” (Emphasis supplied.)
Jillian’s Billiard Club of America, Inc. v. Beloff Billiards, Inc., 35 Mass.App.Ct. 372, 375-76 (1993); further appellate review denied, 416 Mass. 1108 (1993).
Here, the plaintiff argues that the Court should restore its “head start” allegedly lost through defendants’ wrongdoing.
Generally, the “head start rule” has been applied in cases where the plaintiffs product, including the trade secret, has been marketed. The marketing of the product gives competitors a legitimate opportunity to study the product and to learn the principles of the trade secret through reverse engineering or similar procedures ... In a petition for injunctive relief, we have indicated that the time necessary to engineer in reverse is one factor to be considered in determining the propriety of the duration of injunctive relief.
Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 171 (1979). Plaintiff in this case analogizes defendants’ use of In Newsweekly's advertising database to the reverse engineering at issue in Jet Spray.
Other factors are relevant to the Court’s consideration of injunctive relief:
[Defendants who have wilfully attempted to profit through violation of a confidential relationship need not be placed in as good a position as other, honest competitors. “[T]he tendency of the law, both legislative and common, has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade. The tendency still persists.” Restatement of Torts c. 35, Introductory Note at 540 (1938). The plaintiff is entitled to have its trade secrets protected at least until others in the trade are likely, through legitimate business procedures, to have become aware of these secrets. And even then the defendants should not be permitted a competitive advantage from their avoidance of the normal costs of invention and duplication. Where the defendants have saved substantial expense by improperly using confidential information in creating their product, the ultimate cessation of an injunctive order might well be conditioned on their payment of an appropriate sum to the plaintiff. We mention this possibility to remind the lower courts of their creative equitable powers, and in no way intend to limit the scope of judicial discretion on remand.
Analogic Corp. v. Data Translation, Inc., 371 Mass. 643, 649 (1976).
Here, Berggren’s taking of information from plaintiff does not, in and of itself, merit relief, to the extent that the information was public or easily developed by legiti *547 mate means (e.g., the names of advertisers in In Newsweekly, which can be determined by reading that publication, and basic contact information for those advertisers). However, Berggren not only took additional non-public information belonging to plaintiff (e.g., the “notes” he had recorded in the advertising database regarding individual clients’ advertising needs), he wrongfully deprived plaintiff of both the public and non-public information contained in its own records when he deleted all such information from the computer on which that information, belonging to plaintiff, was stored.
In view of the above case law and the facts of this case, the Court considers several factors in its determination of plaintiffs requested relief:
1. There is no employment contract between plaintiff and any defendant; consequently, there is no covenant not to compete (nor does plaintiff allege any), and there is no contractual duty to protect confidential, proprietary information. Rather, plaintiffs claim is based on common law regarding proprietary business information.
2. One or more of defendants solicited advertisers while in plaintiffs employ.
3. Plaintiff first became aware ofBerggreris activities on or about December 14, 2007, and was fully aware of the theft of its advertising database by January 2, 2008, yet waited nearly a full month thereafter to bring this action.
4. The plaintiffs advertisers are readily determined, as is the contact information for them; not as public is the information about their preferences, plans, etc., that Berggren developed and placed in “notes” in the database he created for his employer. Yet plaintiff agrees that, had he not taken the physical files, Berggren could use anything “in his head,” i.e., what he remembers from the information he developed.
5. “Prospects,” as plaintiff describes them, are not yet advertisers, and therefore information as to them is not as publicly available. Berggren’s deletion of plaintiffs information regarding advertisers left plaintiff unable to service or respond to its present advertisers; his deletion of prospect information prevented plaintiff from seeking out the potential business those prospects represented.
Berggren’s wrongful deletion of essential advertiser information from plaintiffs records, together with defendants’ use of plaintiffs confidential documents or electronic data taken from In Newsweekly (i.e., “notes" regarding advertisers, and lists of prospects) to supplement defendant Berggren’s recollection of such information, has caused and continues to cause irreparable harm to plaintiffs relationships and good will with In Newsweekly’s present and prospective advertisers. Accordingly, the Court will enjoin defendants for a reasonable period (reduced to account for plaintiffs delay in seeking relief) designed to restore to plaintiff the “head start” of which it has been deprived by defendants’ wrongful conduct.
ORDER
For the reasons stated above, it is hereby ORDERED that a preliminary injunction shall enter as follows:
For a period of forty-five days from the date of this order, defendants are prohibited from initiating, establishing, continuing, maintaining, or renewing any relationship or contact with any person or entity in the “advertiser database” of InNewsweekly, i.e., any present or prospective advertiser whose name appears in any document or electronic information taken by defendant Berggren from the advertising database on the computer used by him at In Newsweekly, or any other source belonging to plaintiff.

 Plaintiffs motion seeks the return of any electronic, documentary, or similar recorded information taken by defendants from plaintiff with respect to the “advertising database,” as plaintiff calls it. At the hearing, counsel for defendant Berggren and plaintiff stipulated to an order for the return of such material. The Court endorsed the stipulation, and added an order extending its requirements to defendants White and De Mello, both of whom had been served and neither of whom appeared at the hearing.

At the hearing, defendant Berggreris counsel argued against any relief beyond the agreed return of plaintiffs materials, but submitted no affidavits or other evidence.